# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

        **Plaintiff,**

**v.**                         **Case No. 10-20077-02-JWL**
                                             **14-2475-JWL**

**Samuel Barajas,**

        **Defendant.**

## MEMORANDUM & ORDER

In September 2011, defendant Samuel Barajas was convicted by a jury of conspiracy to distribute more than 500 grams of methamphetamine; aiding and abetting possession with intent to distribute 50 grams or more of methamphetamine; and using a communication facility (a cellular telephone) in committing, causing and facilitating the conspiracy. The court sentenced Mr. Barajas to life in prison. Mr. Barajas appealed the denial of his motion to suppress all evidence obtained from wiretap surveillance and GPS pinging of certain cell phones. The Tenth Circuit held on appeal that this court correctly denied the motion to suppress and affirmed this court's decision.

This matter is now before the court on Mr. Barajas's petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 115) and his related motion to appoint counsel (doc. 117). In his § 2255 motion, Mr. Barajas contends that his pretrial counsel, trial counsel and appellate counsel each rendered constitutionally deficient representation that prejudiced Mr. Barajas; that his rights under 28 U.S.C. § 753 were violated; and that the government engaged in misconduct. As will be explained, the petition is dismissed in part and

retained under advisement in part. The court grants Mr. Barajas's request for an evidentiary hearing with respect to his claims that his trial counsel provided ineffective assistance in connection with Mr. Barajas's decision to proceed to trial rather than enter a plea of guilty. That hearing will be set by future order. The court also grants in part Mr. Barajas's motion for appointment of counsel and the court, by future order, will appointment counsel to represent Mr. Barajas with respect to the claims on which an evidentiary hearing is required. The court denies or dismisses all other claims raised in the petition such that the petition is otherwise dismissed.

**Background**

This case arises from a DEA investigation into a San Diego County based drug trafficking organization, involved in the importation, transportation, and distribution of large quantities of methamphetamine and cocaine from Mexico throughout the United States. *See United States v. Barajas*, 710 F.3d 1102, 1104 (10th Cir. 2013). As part of its investigation, DEA agents engaged in wiretap surveillance and GPS pinging cell phones used by members of the organization, including two telephones utilized by Mr. Barajas. The telephones utilized by Mr. Barajas were identified as Target Telephone (TT) No. 24 and Target Telephone (TT) No. 26.

On March 31, 2010, agents pinged TT No. 26, which showed the phone was located within a 5–meter radius of a specific residence in San Diego. On April 2, 2010, agents set up visual surveillance and observed a Toyota Camry entering the address. Agents followed the Camry to a body shop, where they placed a call to TT No. 26. Mr. Barajas, the driver, did not pick up the phone, but later returned the call to the agents. On April 28, 2010, agents again

pinged TT No. 26, which revealed the phone was located within 11 meters of the same San Diego address.  One day later, agents pinged the phone and learned that it was located near a 24–Hour Fitness health club.  Agents went to the location and found a champagne-colored Mercedes, a car they had seen at the San Diego address, in the parking lot.  Agents arrested Mr. Barajas when he exited the club and found TT No. 26 in his pocket.  During a search of the San Diego residence, agents seized nearly $35,000 in currency, a digital scale, two empty Tupperware containers containing methamphetamine residue and photographs of Mr. Barajas.  Prior to a custodial interview with agents, Mr. Barajas waived his *Miranda* rights through a Spanish-language interpreter.  During the interview, Mr. Barajas told agents that he did not live at the San Diego residence.

Mr. Barajas was held in the custody of the San Diego Central Jail in San Diego, California for several months until October 2010, when he was transferred to Kansas City, Kansas in connection with the prosecution of this case.  At that time, a lawyer in the Federal Public Defender's office entered an appearance as counsel for Mr. Barajas.  This lawyer met with Mr. Barajas on several occasions while he was in custody at CCA in Leavenworth, Kansas.  According to Mr. Barajas, his appointed counsel mentioned on one visit that Mr. Barajas's sentencing range for the charged conspiracy was "10 years to life."  He further avers that, on a subsequent visit, his appointed counsel was urging him to cooperate with the government and to provide information about an individual named "Jesus."  Mr. Barajas avers that he insisted to his counsel that he did not know anyone by the name of "Jesus" and his counsel "responded by yelling at [Mr. Barajas] that if [he] kept acting stupid, [he] was going to get more time than what [he] has left of his life."  Beyond that, Mr. Barajas contends that his appointed counsel never

3

discussed the sentencing guidelines with him and provided "defective" advice in connection with plea negotiations.   Ultimately, the Federal Public Defender's office filed a motion to suppress all evidence obtained from the wiretaps of TT Nos. 24 and 26 and all GPS and cell site location data from pinging those telephones.   While that motion was pending, Mr. Barajas, in April 2011, retained counsel to represent him and the lawyer from the Federal Public Defender's office withdrew his appearance.    The court denied the motion to suppress after a hearing on the motion.

In September 2011, Mr. Barajas was convicted by a jury on all counts in the indictment. Mr. Barajas avers that, just prior to jury selection, his retained trial counsel approached him with a plea offer from the government. According to Mr. Barajas, his trial counsel told him that the government was offering a plea deal "of 13 to 17 years."  When Mr. Barajas asked his trial counsel whether he should take the deal, his trial counsel, according to Mr. Barajas's affidavit, told him that the government had offered him a deal because Mr. Barajas had a 95% to 97% chance of winning his case at trial.  When Mr. Barajas asked his trial counsel what his maximum exposure was if he was convicted at trial, his trial counsel allegedly told him that he "could not get a life sentence" because Mr. Barajas was "too young" and had "no criminal record."  Mr. Barajas avers that his counsel told him that the maximum sentence he could receive was 26 years and that the sentencing range would be anywhere from 17 years to 26 years.  According to Mr. Barajas, he rejected the plea deal and proceeded to trial based on this exchange with his trial counsel.  According to Mr. Barajas, his trial counsel never discussed with him the application of the sentencing guidelines to his case and never remotely suggested that Mr. Barajas, if convicted, might face a life sentence.

After the jury convicted Mr. Barajas on all counts, a presentence report was prepared. The PSR calculated a base offense level of 38 based on the quantity of methamphetamine attributed to Mr. Barajas (more than 1.5 kilograms of "Ice"). Mr. Barajas received a two-level enhancement under U.S.S.G. § 2D1.1(b)(5) because the offense involved the importation of methamphetamine and a four-level enhancement based on Mr. Barajas's role in the offense. With an adjusted offense level of 44 and a criminal history category of I, Mr. Barajas's advisory guidelines range was life.[1]  In December 2011, the court sentenced Mr. Barajas to life in prison. Mr. Barajas was appointed new counsel for purposes of his appeal.

**Standard**

The Sixth Amendment provides defendants a right to the effective assistance of counsel, and this right "extends to the plea-bargaining process." *United States v. Watson*, 766 F.3d 1219, 1225 (10th Cir. 2014) (quoting *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012)).  Like other claims of ineffective assistance of counsel, ones made in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.* (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012)).  This test requires a defendant to demonstrate that counsel's performance (1) was unconstitutionally deficient, and (2) resulted in prejudice. *Id.* (citing *Strickland*, 466 U.S. at 687).

The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* (citing *Lafler*, 132 S. Ct.

---

[1] Mr. Barajas's offense level was treated as a 43.  *See* U.S.S.G. § 5A, application note 2 (an offense level of more than 43 is to be treated as an offense level of 43) (Nov. 1, 2011).

at 1384). The prejudice prong of *Strickland* requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citations and quotations omitted). When a defendant asserts that counsel's deficient performance caused him to reject a plea offer and proceed to trial, he must show that

> there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1225-26 (quoting *Lafler*, 132 S. Ct. at 1385; citing *Frye*, 132 S. Ct. at 1410 (holding that, to demonstrate prejudice resulting from counsel's deficient performance that caused a defendant to forgo a favorable plea offer, a defendant must show that "he would have accepted the offer to plead" and that "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented").

**Analysis**

Mr. Barajas raises numerous claims of ineffective assistance of counsel against the three attorneys who represented him at various stages in his case—the Federal Public Defender's office (early stages, pretrial); his retained counsel (pretrial and trial); and his appellate counsel. The court will consider and address these claims in chronological order of their occurrence.

*Claims Concerning Representation by the Federal Public Defender*

6

In October 2010, a lawyer in the Federal Public Defender's office was appointed to represent Mr. Barajas (hereinafter referred to as "pretrial counsel"). That representation lasted until April 2011 when Mr. Barajas retained private counsel to represent him (hereinafter referred to as "trial counsel"). In his motion, Mr. Barajas contends that he received ineffective assistance from his pretrial counsel in several respects: pretrial counsel failed to advise Mr. Barajas that he was facing a potential life sentence if convicted at trial and failed to explain the meaning of a life sentence; that pretrial counsel failed to advise him about the "options and alternatives during the plea negotiation process" and provided "defective advice" during plea negotiations; that pretrial counsel failed to explain the sentencing guidelines to him and how those guidelines related to Mr. Barajas's case; and that pretrial counsel withheld evidence from Mr. Barajas during the pretrial and plea negotiation process. As will be explained, each of these claims is denied.

With respect to Mr. Barajas's claims concerning his pretrial counsel's performance in connection with the plea negotiation process, there is no evidence in the record suggesting that the government had made a plea offer at any time during pretrial counsel's representation of Mr. Barajas. Indeed, pretrial counsel has filed an affidavit in which he avers that he does not recall any plea discussions with the government prior to the entry of appearance by Mr. Barajas's trial counsel. He further avers that, because he had filed a substantial motion to suppress that was still pending before the court at the time he withdrew his appearance, it is doubtful that any plea discussions would have occurred during his representation of Mr. Barajas. Mr. Barajas, in turn, has come forward with no factual allegations suggesting that the government had offered to discuss a plea at any time during pretrial counsel's representation of Mr. Barajas. For this

reason, any claims concerning pretrial counsel's performance concerning plea negotiations are denied.

The court also denies Mr. Barajas's claims that pretrial counsel failed to advise him about the possibility of a life sentence and failed to adequately explain the application of the sentencing guidelines to him.   In the first instance, Mr. Barajas's own affidavit supports the conclusion that pretrial counsel cautioned Mr. Barajas that he was facing a potential life sentence.   Mr. Barajas avers that pretrial counsel, during his third or fourth visit with Mr. Barajas, informed him that his "sentencing range was from 10-years to life" for the conspiracy charge and that, on another occasion, pretrial counsel told Mr. Barajas that if he did not cooperate with the government, he "was going to get more time than what [he] had left of his life."   But even assuming that pretrial counsel failed to advise Mr. Barajas about the possibility of a life sentence and failed to explain the application of the guidelines to him, these claims necessarily fail because Mr. Barajas cannot establish any prejudice from these deficiencies. Significantly, Mr. Barajas does not allege—nor could he credibly allege—that he relied on any of these deficiencies in deciding to proceed to trial rather than enter a plea of guilty.   By the time Mr. Barajas proceeded to trial in September 2012, pretrial counsel had not been representing him for nearly 18 months.   It makes sense, then, that Mr. Barajas does not assert that he decided to proceed to trial based on anything that occurred in connection with pretrial counsel's representation of Mr. Barajas.

Finally, the court denies as conclusory Mr. Barajas's claim that pretrial counsel withheld evidence from him.   Mr. Barajas does not specify what evidence was allegedly withheld; whether pretrial counsel had access to that evidence during his representation of Mr. Barajas;

what significance that evidence may have had in terms of the trial of the case or Mr. Barajas's sentence and whether that significance was apparent during pretrial counsel's representation of Mr. Barajas; or how Mr. Barajas was prejudiced by pretrial counsel's alleged failure to share that evidence with Mr. Barajas.  This claim, then, is dismissed.

*Retained Counsel's Failure to Challenge Waiver of* Miranda *Rights*

Mr. Barajas argues that his retained counsel should have challenged Mr. Barajas's *Miranda* waiver as unknowing and unintelligent.  Mr. Barajas provides no factual allegations supporting the suggestion that his waiver was not knowing or intelligent and the record belies that suggestion.   Agent Shaffer testified that Elizabeth Martinez, the lead monitor on the investigation, was present during Mr. Barajas's custodial interview to serve as an interpreter. According to Agent Shaffer, he handed Ms. Martinez a plastic card with Miranda rights printed on both sides of the card—one side in English and one side in Spanish.  Agent Shaffer asked Ms. Martinez to read "word for word" the Spanish side of the card to Mr. Barajas.  Agent Shaffer also had Ms. Martinez read two questions contained at the bottom of the *Miranda* card—"Do you understand your rights?" and "Do you agree to talk without an attorney present?"   Agent Shaffer testified that Mr. Barajas responded in the affirmative to both questions, as confirmed by Ms. Martinez.  As explained by Agent Shaffer, then, Mr. Barajas, through the assistance of Ms. Martinez, agreed to speak to him without an attorney present. Agent Shaffer testified that the subsequent interview lasted approximately 15 minutes and Mr. Barajas never indicated a desire to conclude the interview or asked for counsel.  None of these facts were disputed at trial and Mr. Barajas does not dispute them now.  Mr. Barajas, then, has

not demonstrated how his trial counsel could have persuaded the court that Mr. Barajas's waiver of his Miranda rights was either unknowing or unintelligent. *United States v. Wallace*, 525 Fed. Appx. 851, 854 (10th Cir. 2013) (defendant cannot make a case for ineffective assistance without pointing to a winning argument passed over by his attorney). This claim is denied.

*Failing to File Motion in Limine*

Mr. Barajas also asserts that his retained trial counsel provided ineffective assistance because he failed to file a motion in limine prior to trial to exclude evidence that agents, during the execution of the search warrant in California, seized two Tupperware containers that contained methamphetamine residue. This claim is denied. While trial counsel did not file a formal motion in limine prior to trial, he nonetheless raised this specific issue with the court at the limine conference prior to trial. At the time, the court and the parties fully fleshed out the issue and the court ultimately determined that evidence concerning the Tupperware containers was admissible at trial. In fact, the court deemed trial counsel to have made an oral motion in limine on the subject and the court overruled that motion. Mr. Barajas, then, can establish no prejudice from counsel's failure to file a motion in limine on this issue.

*Ineffective Assistance by Trial Counsel During Plea Negotiations*

In his motion, Mr. Barajas avers that his retained trial counsel approached him with a plea offer from the government just prior to jury selection. According to Mr. Barajas, his trial counsel told him that the government was offering a plea deal "of 13 to 17 years." When Mr. Barajas asked his trial counsel whether he should take the deal, his trial counsel, according to

Mr. Barajas's affidavit, told him that the government had offered him a deal because Mr. Barajas had a 95% to 97% chance of winning his case at trial. When Mr. Barajas asked his trial counsel what his maximum exposure was if he was convicted at trial, his trial counsel allegedly told him that he "could not get a life sentence" because Mr. Barajas was "too young" and had "no criminal record." Mr. Barajas avers that his counsel told him that the maximum sentence he could receive upon a conviction at trial was 26 years and that the sentencing range would be anywhere from 17 years to 26 years. According to Mr. Barajas, he rejected the plea deal and proceeded to trial based on this exchange with his trial counsel. Mr. Barajas avers that his trial counsel never discussed with him the application of the sentencing guidelines to his case and never remotely suggested that Mr. Barajas, if convicted, might realistically face a life sentence.

The government does not dispute these facts in any respect. It contends, however, that Mr. Barajas' claim necessarily fails because an "erroneous" sentence prediction or sentence miscalculation by defense counsel does not constitute deficient performance arising to the level of ineffective assistance of counsel under Tenth Circuit precedent. In support of this argument, the government relies on *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). But the factual context of *Gordon* is distinguished from that present here. In *Gordon*, the defendant complained that ineffective assistance of counsel led him to accept a guilty plea as opposed to proceeding to trial. The Circuit rejected that claim in part because, although defense counsel had failed to predict the relevant conduct inclusion in the defendant's base offense level, the defendant's responses to the court during the plea colloquy established that defendant was aware that the final calculation of the defendant's sentence might differ from any calculation made by defense counsel and that the court would consider "all available information including factual

data relating to any courts dismissed or about to be dismissed." *Id*. at 1570-71.  Moreover, the defendant's lawyer in *Gordon* had advised him about relevant conduct but had predicted that the court would not add to the defendant's sentence for such conduct.

Because Mr. Barajas rejected the plea offer and proceeded to trial, no plea colloquy occurred that might have mitigated or undercut the advice provided by Mr. Barajas's counsel. The government contends that the transcript from the limine conference is sufficient to establish that no deficient performance occurred, but again the court disagrees.  Mr. Barajas's trial counsel advised the court during the limine conference that Mr. Barajas was proceeding to trial "against my strongest advice" and that he believed that proceeding to trial was "a tactical mistake."  Mr. Barajas, through an interpreter, confirmed to the court during the limine conference that his counsel advised him that he would "get a better deal in sentence" if he accepted a plea rather than proceeding to trial.  These statements, however, are not inconsistent with Mr. Barajas's affidavit.  According to Mr. Barajas, his counsel told him that the plea offer would result in a more favorable sentence than if he was convicted at trial and his affidavit further suggests that his counsel advised him to accept the plea.  *See* Barajas Aff. ¶ 60 (Barajas asked his counsel "Why would you want me to take that deal if you just told me that we have a 95% to 97% chance of winning the case?").  The transcript of the limine conference, then, does not undercut Mr. Barajas's claim of deficient performance, particularly his claim that his counsel never explained (or seemed to consider) the application of the sentencing guidelines to him, never advised him that he likely faced a life sentence under the guidelines if convicted at trial, told him that he had a high likelihood of winning at trial, and told him that his maximum exposure at trial was 26 years imprisonment.

On the record developed thus far, the conduct described by Mr. Barajas appears to fall more on the side of *United States v. Washington*, 619 F.3d 1252 (10th Cir. 2010) rather than *Gordon*. In *Washington,* the Tenth Circuit recognized that a counsel's representation can fall below the Sixth Amendment objective standard of reasonableness as a result of his failure to understand the basic structure and mechanics of the sentencing guidelines. *Id*. at 1259-60. Unlike the situation in *Gordon* where the defendant's counsel provided an erroneous prediction after fully advising the defendant about relevant conduct, Mr. Barajas asserts that he was never in any way informed about the impact of the sentencing guidelines in his case because his counsel did not understand or appreciate the significance of the guidelines (and, more specifically, the sheer quantity of drugs attributed to Mr. Barajas) in calculating Mr. Barajas's sentence. Indeed, the transcript of the limine conference indicates that his counsel believed that Mr. Barajas could receive a sentence as low as six years. In such circumstances, a hearing is required to determine whether this case is more like *Gordon* or more like *Washington*. *See id*. at 1259 (familiarity with the structure and basic content of the guidelines is a necessity for counsel who seek to give effective representation).[2]

The government contends that Mr. Barajas cannot establish the prejudice prong of Strickland because he does not point to any evidence suggesting a reasonable probability that he

---

[2] The government believes that Mr. Barajas's counsel, as a matter of law, provided effective assistance based on Mr. Barajas's admission in his affidavit that, on one occasion, counsel for Mr. Barajas advised Mr. Barajas that the conspiracy charge carried a sentencing range of 10 years to life. There is no indication in the record, however, concerning when, in relation to trial, counsel provided this advice to Mr. Barajas. Moreover, in the absence of any indication that counsel ever indicated to Mr. Barajas, based on the sentencing guidelines and the quantity of drugs involved in the case, that Mr. Barajas would likely face a life sentence, the court cannot conclude that counsel provided effective assistance as a matter of law. Fact questions must be resolved as to these claims.

13

would have taken the plea if his counsel had advised him differently.   According to the government, the "fairest reading" of the record is that Mr. Barajas would have gone to trial in any event.   Contrary to the government's suggestion, the record is not sufficiently developed for the court to determine whether Mr. Barajas would have proceeded to trial.   Significantly, this is not a case in which there is evidence of a defendant's prior rejections of plea offers or a stubborn insistence on proceeding to trial.   There is no evidence in the record of any statements made by Mr. Barajas during plea negotiations suggesting a disinclination to tender a guilty a plea.   Thus, while the government asks the court to ignore Mr. Barajas's "self-serving" testimony that he would have accepted the plea, there is no reason for the court, on this record, to find Mr. Barajas's testimony anything other than credible.   Moreover, it is a case where there is no dispute that Mr. Barajas would have received a much more favorable outcome if he had accepted the government's plea offer.   *Compare United States v. Watson*, 766 F.3d 1219, 1227 (10th Cir. 2014) (defendant who proceeded to trial could not show that he would have accepted a plea where he had previously rejected two plea offers and evidence demonstrated that he repeatedly told his counsel that he would not plead guilty under any circumstances) *and Duran v. Janecka*, 2015 WL 1529751, at *1 (10th Cir. Apr. 7, 2015) (defendant failed on prejudice prong of Strickland where "uniform" testimony that defendant maintained his innocence and wanted a trial); *with Heard v. Addison*, 728 F.3d 1170, 1184-86 (10th Cir. 2013) (factual hearing required on prejudice inquiry where proceeding to trial rather than entering guilty plea would have been rational under the circumstances and would likely have resulted in a more favorable outcome and defendant began actively trying to withdraw his plea as soon as he realized of viable defense that counsel had not raised); *see also Griffin v. United States*, 330 F.3d 733, 737

14

(6th Cir. 2003) ("[A] substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer.").

Finally, there is no reason to believe that the court would not have accepted the plea agreement or that the government would have withdrawn its offer—and the government does not suggest that it would have done so.  In these circumstances, Mr. Barajas is entitled to a hearing on his claims concerning his decision to proceed to trial rather than enter a guilty a plea. *See Frye*, 132 S. Ct. at 1410 (holding that, to demonstrate prejudice resulting from counsel's deficient performance that caused a defendant to forgo a favorable plea offer, a defendant must show that "he would have accepted the offer to plead" and that "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented").

*Failure to Object to Hearsay Evidence during Trial*

Mr. Barajas contends that his retained counsel was ineffective during trial because he failed to object to certain hearsay testimony provided by Ryan Stacy, special agent with the DEA.  This claim is denied because, even assuming that he could establish deficient performance, Mr. Barajas cannot establish the prejudice prong of the *Strickland* analysis. During his direct examination, Agent Stacy identified a person in a photograph as an "individual who was identified to us by the confidential source as El Moro."  Mr. Barajas's trial counsel did not timely object to this testimony, but raised a hearsay objection at the end of Agent Stacy's direct examination.  The court agreed with trial counsel that the statement was offered for the

truth of the matter—to establish a link between El Moro and Mr. Samy, who had said on an audio recording introduced at trial that "El Moro" was a name that he used—and permitted trial counsel to move to strike the testimony despite not having made a contemporaneous objection. The court granted the motion to strike and instructed the jury to disregard the witness's statement about what the confidential source told him about El Moro. Mr. Barajas, then, can establish no prejudice from trial counsel's failure to lodge a contemporaneous objection to the testimony because the court remedied the oversight in any event.

*Failure to Object to Transcripts of Audio Recordings*

Mr. Barajas also contends that his trial counsel was ineffective because he failed to object to or otherwise challenge the accuracy of the translated transcripts of the Spanish audio recordings of intercepted cell phone conversations that occurred over the wiretapped cell phones. This claim fails as Mr. Barajas has not identified any basis upon which his trial counsel might have lodged a successful objection to any portion of any transcript and he does not even assert that any transcript contained any errors or omission, either in substance or by virtue of the translation from Spanish to English. *United States v. Wallace*, 525 Fed. Appx. 851, 854 (10th Cir. 2013) (defendant cannot make a case for ineffective assistance without pointing to a winning argument passed over by his attorney).[3]

---

[3] In a separate but related claim, Mr. Barajas asserts that his counsel was ineffective because he failed to request a jury instruction cautioning the jury that the transcripts were not evidence of the recorded conversations but were provided for demonstrative purposes only. This claim fails because translated English-language transcripts of the Spanish-language audio recordings were admitted as evidence at trial and not merely for demonstrative purposes. *See United States v. Gutierrez*, 757 F.3d 785, 788 (8th Cir. 2014) ("In a case with English-language recordings, the

*Failure to Challenge Search Warrant*

Mr. Barajas next contends that his trial counsel was ineffective for failing to challenge the validity of the search warrant (or otherwise challenge the admissibility of evidence during the execution of the warrant) executed on April 29, 2010 during which agents searched the San Diego residence and found evidence that was prejudicial to Mr. Barajas. The court denies this claim. Mr. Barajas identifies no colorable basis on which his counsel could have challenged the warrant or the search itself and, in fact, Mr. Barajas advised agents during his post-*Miranda* interview that he did not live at the residence, effectively foreclosing any argument that Mr. Barajas had an expectation of privacy in the residence. Because Mr. Barajas has not demonstrated a meritorious Fourth Amendment claim, an ineffective-assistance claim premised on his counsel's failure to raise a Fourth Amendment claim necessarily fails. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

*Failure to Transcribe Voir Dire Proceedings and Jury Instructions*

Mr. Barajas claims that his trial counsel and appellate counsel were ineffective because they failed to transcribe the voir dire proceedings.[4] Although his argument is not entirely clear, it appears that Mr. Barajas believes that the voir dire proceedings were not stenographically

---

audio recordings typically are the only evidence of the conversation; any transcripts are furnished to the jury merely as an aid in following the audio. But where the evidence is a foreign-language recording, the jury usually cannot understand the audio recording. Transcripts must be prepared and introduced as evidence so that the jury has a basis for considering the substance of the recording.").

[4] This is the only claim asserted by Mr. Barajas against his appellate counsel.

recorded by a court reporter in the first instance and he asks the court to "reconstruct" the proceedings so that Mr. Barajas may determine whether a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986) occurred.  To the extent Mr. Barajas suggests that his counsel erred in not asking to have the voir dire proceedings "recorded," this claim is denied because in this District, voir dire proceedings in a criminal case, as a matter of course, are always stenographically recorded by a court reporter.  To the extent Mr. Barajas suggests that his trial counsel or appellate counsel erred by failing to have that recording subsequently transcribed into a written document, this claim is denied because he has shown no prejudice in that he has set forth no factual allegations remotely supporting a possible *Batson* violation.  Similarly, although Mr. Barajas complains that the jury instructions were not "transcribed," the instructions that were provided to the jury were filed in this case and appear on the docket of the case.  Because he alleges no substantive error stemming from those instructions, his claim must be denied.

*Stipulations to Evidence*

Next, Mr. Barajas contends that his trial counsel was ineffective because he stipulated to the admission of evidence and that such stipulations prejudiced Mr. Barajas's ability to challenge that evidence on various grounds.  This claim is entirely conclusory as Mr. Barajas does not even identify any specific evidence to which his counsel stipulated, let alone any specific evidence that, but for the stipulation, would have been inadmissible.  Moreover, Mr. Barajas does not contend that any evidence to which his counsel stipulated but that otherwise would have been inadmissible at trial actually affected the outcome of the trial.  *See Strickland*,

466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

*Failure to Object to "Expert" Testimony*

According to Mr. Barajas, his trial counsel provided deficient performance when he failed to object to "expert" testimony provided by two DEA translators who testified at trial and by Agent Nathan Shaffer.  Mr. Barajas contends that these witnesses provided expert testimony but were not previously disclosed as or qualified as experts.  By way of background, the translators provided testimony regarding their transcription and translation of intercepted phone calls (for use by case agents during the investigation phase of the case).  Both translators testified that the person identified as "Samy" on Target Telephone 24 was the same individual as the person identified as "Samy" on Target Telephone 26.  Moreover, one translator testified that, through voice identification, she determined that Mr. Barajas was the person identified as "Samy" on those target telephones.  With respect to Agent Shaffer, Mr. Barajas objects to that portion of Agent Shaffer's testimony during which he "translated" various narcotics code words.

The nature and subject of the testimony provided by these witnesses did not constitute expert testimony.  Agent Shaffer's testimony was clearly based on his first-hand observations in the underlying investigation as the lead case agent.  *United States v. Akins*, 746 F.3d 590, 599 (5th Cir. 2014) (testimony about the meaning of drug code words can be within the proper ambit of a lay witness with extensive involvement in the underlying investigation; agent's testimony permissible under FRE 701).  Moreover, the voice identification testimony provided by the translators was based on the translators' familiarity with Mr. Barajas's voice and the voice of the

19

person identified as "Samy" on the two target telephones and, as such, was properly admissible as lay testimony.  *See United States v. Mendiola*, 707 F.3d 735, 740-41 (7th Cir. 2013) (district court properly admitted DEA linguist's identification of defendant's voice on intercepted calls under FRE 701 and FRE 901(b)(5) where identification was based on linguist's familiarity with defendant's voice); *United States v. Ortiz*, 536 Fed. Appx. 127, 128-29 (2nd Cir. 2013) (district court properly admitted interpreters' voice identification evidence as lay opinion; while witness "may have brought a more trained ear to the process, her testimony was based on her own investigation and perceptions, not on her specialized knowledge).  Thus, Mr. Barajas's trial counsel cannot be deemed to have provided ineffective assistance by failing to object to the testimony as "expert" testimony.  Stated another way, even if trial counsel had asserted an objection to the testimony, the court would have overruled that objection.  This claim is denied.


*Failure to Move for Mistrial Based on Sleeping Jurors*

Mr. Barajas claims that a juror was sleeping during trial and that his trial counsel should have moved for a mistrial on that basis.  This claim is denied.  On at least two occasions during trial, Mr. Barajas's trial counsel expressed concern to the court that one or more jurors was sleeping during the presentation of evidence.  As explained by the court during trial, the court had been watching the jurors closely to determine whether anyone was sleeping and the court determined that none of the jurors was sleeping during trial:

> Well, I don't think he's sleeping.  I have been watching—from time to time jurors close their eyes while they are taking in the evidence.  I don't think he's sleeping.

When the issue was raised again by Mr. Barajas's counsel, the court again rejected the claim:

Counsel:  Mr. Barajas has been watching the jury.  He's my jury watcher.  He's advised me that Juror No. 7 and Juror No. 10 continue—and I told him he can speak directly to you—continue to be nodding off, your Honor.

Court:  They are not sleeping.  I am watching them.  The way the monitors are placed, the way their notes are placed, they are looking down.  I am watching them, and periodically they look up, then they glance back down at what they are doing.  They are not sleeping.

Counsel:  Okay.  I can tell by your tone I'm frustrating you.  I don't mean to, Judge.

Court:  I certainly would want to be put on alert to a juror who is sleeping, but they are not sleeping.

Trial counsel, then, brought his concerns about sleeping jurors to the attention of the court on at least two occasions, the court monitored that issue during the course of the trial and the court found that the concern lacked merit.  Thus, even if trial counsel had moved for a mistrial based on jurors allegedly sleeping during the presentation of evidence, the court would have denied that motion.  Mr. Barajas, then, cannot establish any prejudice under *Strickland*.


*Late Disclosure of Warrant and Failing to Request Time to Review Warrant*

Mr. Barajas contends that the government did not disclose the search warrant for the California residence until the end of trial and that his counsel provided deficient performance by failing to request adequate time to review the warrant once it was disclosed.  This claim is denied.  The trial transcript reflects that the government made the warrant available to Mr. Barajas's trial counsel prior to trial.  Mr. Barajas's trial counsel did not dispute that the government had made the warrant available prior to trial and the court accepted the government's representation along those lines.  Mr. Barajas's counsel, however, did not avail

himself of the opportunity to review the warrant prior to trial. There is no factual basis, then, for a claim of "government misconduct." Mr. Barajas's ineffective assistance claim also fails because, as previously explained, Mr. Barajas has not shown any meritorious Fourth Amendment claim in any event.

*Violation of Federal Court Reporters Act*

Lastly, Mr. Barajas claims that his rights under 28 U.S.C. § 753(b) were violated in light of "hundreds of omissions" from the pretrial and trial transcript. Aside from the fact that Mr. Barajas has not identified any omissions from the transcripts of the proceedings in this case, Mr. Mr. Barajas is barred from asserting this claim because he did not assert it on direct appeal and he has not demonstrated cause excusing his procedural default. *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012). The court, then, dismisses this claim for lack of jurisdiction.

**Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to the claims denied above, for the same reasons stated, Mr. Barajas has

not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Barajas's motion to vacate under 28 U.S.C. § 2255 (doc. 115) is **dismissed in part and retained under advisement in part** and his motion to appoint counsel (doc. 117) is **granted in part and denied in part**.  By future orders, the court shall appoint counsel and set an evidentiary hearing on defendant's claims that his trial counsel provided ineffective assistance in connection with Mr. Barajas's decision to proceed to trial rather than enter a plea of guilty.  Defendant's petition is otherwise dismissed.

**IT IS SO ORDERED.**

Dated this 8th day of May, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

23